**CHRONOS SHIPPING, et al., Plaintiffs,**

v.

**UNITED STATES COAST GUARD, Defendant.**

**Civil Action No. 96–5122.**

United States District Court, E.D. Pennsylvania.

March 13, 1997.

---

**35.** All other objections to the text of the PSI report have been considered and are also overruled.

Ann–Michele Higgins, Rawle & Henderson, Philadelphia, PA, for plaintiffs.

Mee Lon Lam, U.S. Dept. of Justice, Torts Branch, Washington, DC, for defendant.

### ORDER AND MEMORANDUM

KATZ, District Judge.

**AND NOW,** this 13th day of March, 1997, upon consideration of Plaintiff's Motion for Summary Judgment, defendant's Motion for Summary Judgment, and the responses thereto, it is hereby **ORDERED** that the plaintiff's Motion is **DENIED** and the defendant's Motion is **GRANTED.**

### DISCUSSION

**Factual Background**

On November 17, 1994, the Master of the M/V ARGONAFTIS, Captain Dovas, requested permission from the United States Coast Guard to proceed from Big Stone Anchorage, Delaware, up the Delaware River to the SUN Refinery at Marcus Hook, Pennsylvania to unload the rest of its cargo. R.O. at 168–170; R.M. at 195–197.[1] The vessel's Tank Vessel Examination (TVE) Letter had expired. *Id.* Dovas assured the Coast Guard that all the ship's vital signs were satisfactory and that there were no known deficiencies; the Coast Guard then granted Dovas' request to travel up the Delaware River and receive its Tank Vessel Examination at the SUN Refinery. *Id.*

On November 21, 1994, the Coast Guard conducted the TVE on the vessel. *Id.* Before the Coast Guard began this examination, Dovas told the Coast Guard that there was a

---

1. In referring to the administrative records, "R.O." refers to 0553MV95000976, the record for Chronos Shipping. "R.M." refers to 0553M95001069, the record for Captain Dovas.

crack in the sideshell of the number four starboard wing tank. *Id.* Dovas told the Coast Guard that he had seen the crack while he was at Big Stone Anchorage. *Id.* A representative of plaintiff Chronos Shipping, the superintendent, was also present. He stated that he was made aware of the crack at 4 a.m. on November 21, 1994 when he was notified by Dovas. *Id.* Dovas did not notify the Coast Guard because he thought the superintendent would; the superintendent did not do so because he knew the Coast Guard would soon be on board to conduct the TVE. *Id.*

The Coast Guard eventually imposed civil penalties against both Dovas and Chronos for violating 33 C.F.R. § 160.215 which provides that

> [w]henever there is a hazardous condition either aboard a vessel or caused by a vessel or its operation, the owner, agent, master, operator, or person in charge shall immediately notify the nearest Coast Guard Marine Safety office or Group office.

This regulation is promulgated pursuant to the Ports and Waterways Safety Act, which allows for civil penalties up to $25,000 to be assessed for each violation. *See* 33 U.S.C. § 1232(a); 33 C.F.R. § 160.1. The civil penalty assessed against Chronos was $10,000; the amount assessed against Dovas was $20,-000. R.O. at 99–100; R.M. at 159–160.

Plaintiffs instituted this action, arguing that Chronos' and Dovas' failure to report the crack was a single violation for which a maximum penalty of $25,000 should have been assessed and that assessing more than $25,000 total was arbitrary and capricious, violated due process, and constituted Double Jeopardy. In Count II, plaintiffs contend that Chronos was the operator not the owner of the ship, and therefore, the regulation does not apply to it. The parties have filed cross-motions for summary judgment. For the reasons stated below, the defendant's motion is granted.

### Summary Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). At the summary judgment stage, the court does not weigh the evidence and determine the truth of the matter. Rather, it determines whether or not there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing there are no genuine issues of material fact, *Gans v. Mundy,* 762 F.2d 338, 340–41 (3d Cir.1985), and, in response, the non-moving party may not rely merely upon bare assertions, conclusory allegations, or suspicions. *Fireman's Ins. Co. v. DuFresne,* 676 F.2d 965, 969 (3d Cir.1982).

### Source of Jurisdiction

This court has jurisdiction pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. While the APA does not provide an independent grant of jurisdiction, the APA in combination with 28 U.S.C. § 1331 provides jurisdiction for this court to review the constitutionality of the Coast Guard's actions. *See Lawrence v. United States,* 631 F.Supp. 631, 638 (E.D.Pa.1982); *see also Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.,* 27 F.3d 911, 915 (3d Cir.1994) (holding that the APA is not an independent source of jurisdiction).

This court, however, does not have jurisdiction under the Ports and Waterways Safety Act, 33 U.S.C. § 1221 *et seq.,* as the plaintiffs contend. *See* Am.Compl. ¶ 3. Plaintiffs contend that this court has jurisdiction pursuant to 33 U.S.C. § 1232(d). Section 1232(d) provides:

> (d) Injunctions
>
> . The United States district courts shall have jurisdiction to restrain violations of this chapter or of regulations issued hereunder, for cause shown.

The plain language of the provision clearly indicates that this section gives district courts jurisdiction to enjoin those who violate Coast Guard regulations—not those who contest the Coast Guard's assessment of civil penalties against them. Indeed, if there was to be a grant of jurisdiction within the PWSA for review of this sort of action, it should be

found within § 1232(a)—the civil penalty provision. No such grant can be found within that section. Indeed, in a different factual context, the Third Circuit has held that the PWSA does not contain a waiver of sovereign immunity and thus does not create a private remedy. *See Patentas v. United States,* 687 F.2d 707, 712 (3d Cir.1982). The court noted that the civil and criminal penalty provisions "do not suggest that a private remedy is available." *Id.*

Plaintiffs contend that the APA does not apply, citing to *United States v. Florida East Coast Ry.,* 410 U.S. 224, 93 S.Ct. 810, 35 L.Ed.2d 223 (1973), *United States v. Allegheny–Ludlum Steel Corp.,* 406 U.S. 742, 92 S.Ct. 1941, 32 L.Ed.2d 453 (1972), and *United States v. Independent Bulk Transp., Inc.,* 480 F.Supp. 474 (S.D.N.Y.1979). Their reliance on these cases is misplaced. These cases held that the stricter procedural requirements of §§ 556 and 557 of the APA do not apply in the absence of specific statutory language. For example, in *Independent Bulk,* the plaintiff argued that the adjudicatory proceeding was not in accordance with these sections of the APA. 480 F.Supp. at 476. The district court held that these sections were inapplicable because "another statute [did not require] that they be utilized." *Id.* at 477. The district court still reviewed the Coast Guard's adjudication to ensure that it was neither arbitrary nor capricious. *Id.* at 476; *see also Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560, 1574–75 (10th Cir.1994) (noting that the "arbitrary and capricious" standard is used to review informal agency action under § 706(2)(A) while the more stringent "substantial evidence" standard is used to review formal agency action under § 706(2)(E)). This court may also review the Coast Guard's actions, and under the cases cited by plaintiff, it may not hold the Coast Guard to the stricter procedural standards mandated by §§ 556 and 557.

**Standard of Review**

▮ In reviewing the Coast Guard's actions, this court shall "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with law." 5 U.S.C. § 706(2)(A). In making this determination, the court must consider whether there has been a clear error in judgment and whether the decision was based upon consideration of all the relevant factors. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). "Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Id.*

▮ An agency's interpretation of its own regulations is entitled to "substantial deference." *Olenhouse,* 42 F.3d at 1575. Under 5 U.S.C. § 706(2)(B), this court may also review the constitutionality of the Coast Guard's actions. This review is de novo. *Bennett v. National Transp. Safety Bd.,* 66 F.3d 1130, 1136 (10th Cir.1995); *Western Energy Co. v. United States Dept. of the Interior,* 932 F.2d 807, 809 (9th Cir.1991).

**Due Process**

Plaintiffs contend that the regulation is unconstitutionally vague as "hazardous condition" is not defined, and therefore, they did not have adequate notice of what would constitute a violation of the regulation. *See* 33 C.F.R. § 160.215 (requiring notice whenever there is "a hazardous condition").

"Hazardous condition" is defined within the regulations, however. 33 C.F.R. § 160.203 defines "hazardous condition" as

> any condition that may adversely affect (1) the safety of any vessel, bridge, structure, or shore area or (2) the environmental quality of any port, harbor, or navigable waterway of the United States. It may—but need not—involve collision, allision, fire, explosion, grounding, leaking, damage or injury or illness of a person aboard, or manning-shortage.

Thus, plaintiffs are simply incorrect in their assertion that the term is not defined.

▮ Moreover, the term, "hazardous condition," as defined by the regulations, passes constitutional muster. The purpose of the void for vagueness doctrine is to ensure that a statute or standard gives "fair

warning" of what constitutes prohibited conduct. *See San Filippo v. Bongiovanni*, 961 F.2d 1125, 1135 (3d Cir.1992). "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). This determination is made on a case by case basis in which the regulation must be examined to see if it is vague as applied to the affected party. *See San Filippo*, 961 F.2d at 1136.

■ The regulation is not vague as applied to the plaintiffs. The Coast Guard held the penalty was appropriate in light of "the seriousness of the violation and the potential risk it created." R.M. at 9. The Coast Guard's finding that this case clearly presented a hazardous condition is not arbitrary and capricious in light of this record. The vessel was loaded with crude oil. R.M. at 192. The crack, which affected the structural integrity of the vessel, presented a serious threat to the environmental quality of the waterways. *See* R.M. at 196, 202, 209 ("The master risked taking the vessel up the river with a known hazardous condition which posed the threat of a potentially catastrophic structural failure which could have caused a major marine casualty and pollution incident."). Thus, the term "hazardous condition" is not void for vagueness as applied to these plaintiffs.

### Double Jeopardy/Excessive Fines

■ Fining both of the plaintiffs does not violate the Double Jeopardy Clause. First, the plaintiffs are two different people/entities, and thus punishing one plaintiff does not implicate the other. This is true despite the fact that the superintendent and the Master may both be agents of the operator, Chronos Shipping. They may be agents of the same principal, but "this constitutional protection is intrinsically personal." *United States v. Halper*, 490 U.S. 435, 447, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487 (1989). In *United States v. Louisville Edible Oil Prods., Inc.*, 773 F.Supp. 15, 18 (W.D.Ky.1990), *aff'd* 926 F.2d 584 (6th Cir.1991), the court was faced with a similar argument. There, the United States charged the defendants with violating CERCLA and the Clean Air Act. *Id.* Defendant Louisville Edible Oil Products ("LEOP") had been fined previously by the Jefferson County Air Pollution Control District. *Id.* at 16. Another defendant was a shareholder of LEOP, an S corporation, and two defendants were compensated based on LEOP's profitability. *Id.* at 18. All three argued that the fines assessed against LEOP were essentially assessed against them, thus implicating Double Jeopardy concerns. *Id.* Noting the intrinsically personal nature of this constitutional protection, the district court rejected this argument. *Id.*

The *LEOP* court's reasoning applies with equal force to this case. Double Jeopardy concerns are not present merely because the plaintiffs are both agents of the same party.

Because the plaintiffs may not be treated as one person for Double Jeopardy purposes, the imposition of a civil penalty against one does not affect the other. In the context of civil forfeitures, courts have held that where a party does not contest the forfeiture, he is not a party to that proceeding, and therefore, jeopardy does not attach. *See, e.g., United States v. Day*, 897 F.Supp. 1298 (D.Or.1995), *aff'd* 92 F.3d 1194 (9th Cir.1996); *United States v. Kemmish*, 869 F.Supp. 803 (S.D.Cal.1994), *aff'd*, 66 F.3d 336 (9th Cir. 1995).[2] The *Kemmish* court held that the defendant "could neither be placed in jeopardy nor 'punished' in the constitutional sense unless he has participated as a party in a proceeding and in a manner aimed at determining, at least in party, his personal culpability." 869 F.Supp. at 805.

In each of the Coast Guard proceedings, the Coast Guard focused on each individual plaintiff's culpability in failing to report the hazardous condition. Neither proceeding implicated the other plaintiff. Thus, assessing fines against both plaintiffs individually did not implicate the Double Jeopardy Clause.

---

**2.** *But see United States v. Ursery*, —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996) (holding that civil in rem forfeitures are not "punishment" for purposes of the Double Jeopardy Clause).

This court declines to hold that these fines do not constitute punishment. In order for this court to so hold, it must find (1) that the actual or subjective purpose is not to punish; (2) that the objective purpose is not punitive; and (3) that the effect does not amount to punishment. *Artway v. Attorney Gen.,* 81 F.3d 1235 (3d Cir.1996). These penalties may be punitive as the amounts are determined by the "nature, circumstances, extent and gravity of the prohibited acts committed, and with respect to the violator, the degree or culpability, any history of prior offenses, ability to pay, and such other matters as justice may require." 33 U.S.C. § 1232. However, for the reasons stated above, the Double Jeopardy Clause is not implicated.

Additionally, whether these penalties are punishment need not be determined to address the validity of plaintiffs' argument that these penalties violate the Excessive Fines Clause. Under the circumstances, the assessing of a total of $30,000 against these plaintiffs is not excessive. *See Ursery,* —— U.S. at ——, 116 S.Ct. at 2146 ( [T]he second stage of inquiry under the Excessive Fines Clause asks whether the particular sanction in question is so large as to be "excessive.").

**Both Plaintiffs May Be Fined Under the Regulation**

 Plaintiffs argue that (1) the statute only imposes a duty on one of them, not both, to make the required notification and (2) since only one notification is required, only one penalty may be imposed. As to plaintiffs' first contention, the Coast Guard's construction of its regulation is not that both of the plaintiffs had to make the required notification. Rather, the record reflects that the Coast Guard states that only one notification had to be made. *See* R.O. at 6. Thus, both plaintiffs did not need to notify the Coast Guard, but one was required to notify the Coast Guard. No one, however, notified the Coast Guard.

The question then becomes whether a penalty may be imposed on both of the plaintiffs when admittedly, if one had made the required notification, the other would be absolved of liability. The court agrees with plaintiffs that the Coast Guard's analogy to joint and several liability is not particularly apt because under that principle a plaintiff's loss of $25,000 would be divided amongst the defendants. *See* R.O. at 129. However, this case in analogous to one where different defendants can have independent duties to act, and both can be held responsible for their omissions, despite the fact that only one action is required, i.e., two people might have independent duties to rescue where the person in danger need be saved only once.

Here, both plaintiffs were obligated to notify the Coast Guard. The statute allows for civil penalties to be imposed for "any person" who violates the regulations. *See* 33 U.S.C. § 1232(a)(1). Both plaintiffs failed to make the required notification; therefore, both may appropriately be fined.[3] Additionally, the Coast Guard's failure to consider the plaintiffs penalties jointly was neither arbitrary nor capricious. Plaintiffs had the opportunity to advance the same arguments to the Coast Guard that they presented to this court, and they did so.

**Chronos Shipping as Operator**

In Count II of the Amended Complaint, Chronos argues that the regulation does not apply to it because it is the operator of the vessel. The amended regulation that was applicable when the violation occurred, however, allows for assessment of the penalty against the operator. *See* 33 C.F.R. § 160.215. Thus, Chronos' claim under Count II must fail.

3. Indeed, this was precisely the point demonstrated by the Third Circuit in *United States v. One 1973 Rolls Royce, V.I.N. SRH–16266,* 43 F.3d 794, 814–815 (3d Cir.1994). In discussing the use of "or" and how a disjunctive can be reformulated as a conjunctive, the Third Circuit uses the example of a statute that states that no cars or motorcycles are allowed in the park. *Id.* Thus, to keep a vehicle out of the park, it must be shown that the vehicle is either (1) a car or (2) a motorcycle. *Id.* However, from the other point of view, to bring a vehicle into the park, a person must demonstrate that the vehicle is (1) not a car and (2) not a motorcycle. *Id.*

Here, in order to be absolved from liability, each plaintiff must demonstrate that they are not one of the people obligated by statute to make the required notification. Neither can do so.